# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOWARD,<br><br>          Plaintiff,<br><br>    vs.<br><br>J. WANG, et al.,<br><br>          Defendants. | ) 1:10cv01783 AWI DLB PC<br>)<br>) FINDINGS AND RECOMMENDATIONS<br>) REGARDING DEFENDANTS' MOTION<br>) FOR SUMMARY JUDGMENT<br>) (Document 56)<br>)<br>) THIRTY-DAY OBJECTION DEADLINE<br>)<br>) ORDER DISREGARDING PLAINTIFF'S<br>) REQUESTS FOR JUDICIAL NOTICE<br>) (Documents 73 and 75) |

        Plaintiff Timothy Howard ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The action is proceeding on Plaintiff's Eighth Amendment deliberate indifference claim against Defendants J. Wang and Edgar Clark.[1]

---

[1] Plaintiff contends that his Second Amended Complaint also states a conditions of confinement claim, and he faults Defendants for not addressing the claim in their motion. However, in the Court's January 22, 2013, the Court found that only Plaintiff's Eighth Amendment medical claim was cognizable.

1

Defendants filed a motion for summary judgment[2] on January 30, 2014. Plaintiff opposed the motion and filed evidentiary objections on February 24, 2014. Defendants filed their reply, along with evidentiary objections, on April 1, 2014. The motion is submitted upon the record without oral argument. Local Rule 230(l).

## I.   LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.      SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Pelican Bay State Prison in Crescent City, California.  The events at issue occurred while Plaintiff was incarcerated at Corcoran State Prison ("CSP") in Corcoran, California.

According to Plaintiff's October 14, 2011, Second Amended Complaint, Plaintiff is a paralyzed prisoner.  On August 21, 2009, Plaintiff was the subject of an emergency cell extraction while he was housed in the Security Housing Unit ("SHU") at CSP.  Plaintiff was dragged by his arms and placed face down in the rotunda.  He contends that he was assaulted and verbally abused.

Plaintiff was partially examined by LVN Garcia on August 21, 2009, and sent for emergency medical treatment.  Plaintiff was examined first by Defendant Dr. Wang.  Defendant Wang diagnosed Plaintiff as paralyzed, with injuries to his left foot.  Defendant Wang told Plaintiff that he had a swollen left foot, with a possible fracture, and said, "I know you can't walk because you're paralyzed, but custody desires to have your DPW status and wheelchair and appliances taken, but I'm ordering you to return to your cell as a paralyzed prisoner with DPW

status (full time wheelchair user) with pain/seizure medication and no weight on left foot anticipated." ECF No. 28, at 7.  However, Plaintiff alleges that Defendant Wang wrote orders allowing a paralyzed prisoner to be confined to his cell without a wheelchair.

Several minutes after Defendant Wang left the room, Defendant Dr. Clark arrived. Plaintiff alleges that Defendant Clark was hostile and unprofessional.  He verbally abused Plaintiff, stating "you dumb idiot and no good crippled bastard, are you fucking crazy?"  ECF No. 28, at 7.  Defendant Clark looked at Plaintiff's left foot and said, "I hope it's broke and the only leg you had to stand on is no longer!"  ECF No. 28, at 7.

Defendant Clark told Plaintiff that he spoke to the Investigative Service Unit ("ISU") and that they wanted Plaintiff removed from the disability program and left inside his cell without medical appliances or pain medication.  Defendant Clark told Plaintiff that this would happen.

Defendant Clark submitted medical orders to remove all medical appliances.  These orders had to be approved by Defendant Wang.

Plaintiff explained that the ISU's version of events was false and that he never stood, ran, kicked or broke any appliance.  Defendant Clark told Plaintiff that he did not need to examine him, and stated, "your appliances are gone and you can crawl on your belly asshole."  ECF No. 28, at 8.

Plaintiff was immediately transferred to another institution with no orders for medication or chronos for appliances such as a wheelchair.  He alleges that he was forced to crawl on his stomach for food and to use the bathroom.

Eight months after his transfer, Plaintiff was examined by a neurologist and diagnosed as paralyzed.

Based on these facts, Plaintiff alleges that Defendants Clark and Wang were deliberately indifferent to a serious medical need.

### III. DEFENDANTS' GENERAL EVIDENTIARY OBJECTION

Defendants object to *all* of Plaintiff's exhibits submitted in support of his opposition. Without specific arguments, Defendants simply argue that Plaintiff's evidence is not authenticated and must be stricken.

Unauthenticated documents cannot be considered in a motion for summary judgment, Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011) (citing Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)) (quotation marks omitted), and therefore, lack of proper authentication can be an appropriate objection where authenticity is genuinely in dispute.

With the exception of approximately five exhibits, Plaintiff's exhibits are comprised of prison records maintained in his central and medical files. To the extent that Plaintiff's medical records are duplicates of records submitted in the first instance by Defendants, Defendants objection is overruled. Where a document has been authenticated by a party, the authentication requirement is satisfied for all parties as to that document. Orr, 285 F.3d at 776.

Regarding the other prison records, an inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility, Orr, 285 F.3d at 776, and documents may be authenticated by review of their contents if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285 F.3d at 778 n.24) (quotation marks omitted). Defendants do not suggest that these documents are not official prison records from Plaintiff's file(s). The characteristics of the records themselves in terms of appearance, contents, and substance lead the Court to conclude easily that the documents have been authenticated by their distinctive characteristics, and that they are what they appear to be: official prison records. Fed. R. Evid. 901(b)(4); Las Vegas Sands, LLC, 632 F.3d at 533; see also Abdullah v. CDC, 2010 WL4813572, at *3 (E.D.Cal. 2010) (finding an objection for lack of foundation and authentication unavailing where the records were from the plaintiff's prison file and they were created and maintained by prison officials); Burch v. Regents, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) (overruling objections to the introduction of documentary evidence where the

defendants did not actually dispute the authenticity of them and where the plaintiff would be able to authenticate them at trial).

If Defendants genuinely disputed the authenticity of any of these records, they could have made specific objections as to those records. Notably, they did not and their bare objection to Plaintiff's prison records for lack of proper authentication is overruled. Fed. R. Evid. 901(b)(4); Las Vegas Sands, LLC, 632 F.3d at 533.

Finally, as to the remaining documents, Exhibits F and T are Defendants' declarations submitted in support of their motion for summary judgment. Because Defendants have already submitted these documents, their objections are overruled.

Exhibits O and F-1 are Defendants' discovery responses, and E-1 is the report of the probation officer in Plaintiff's criminal trial involving the events at issue in this action. There is no indication that these documents are not authentic, and Defendants have not pointed to any specific characteristic that would suggest that the documents were not genuine.

Accordingly, Defendants' general objection based on authentication is overruled.

## IV.  PLAINTIFF'S OBJECTION BASED ON TIMELINESS OF DISCLOSURES

Plaintiff objects to certain evidence because he believes that Defendants did not file timely initial disclosures. Defendants' initial disclosures were served on December 3, 2013, fourteen days after the Court denied Defendants' motion for reconsideration of the initial disclosure requirement. Plaintiff contends that because the discovery cut-off was December 5, 2013, and he did not receive the disclosures until December 9, 2013, he was prevented from investigating.

The fact remains, however, that Plaintiff received the initial disclosures. If Plaintiff required additional time for discovery, he could have motioned the Court for modification of the Discovery and Scheduling Order. He did not, and he cannot now object to evidence submitted in support of Defendants' motion on this basis. Plaintiff's objections based on the timing of Defendants' initial disclosures are overruled.

V.   **PLAINTIFF'S REQUESTS FOR JUDICIAL NOTICE**

On April 22, 2014, Plaintiff filed a Motion for Request for Judicial Notice in which he seeks to respond to Defendants' authenticity objection to his lodged evidence. However, as the Court has overruled Defendants' objection, the Court DISREGARDS Plaintiff's motion and the attached exhibits.

Plaintiff filed a second Motion for Request for Judicial Notice on May 12, 2014. Plaintiff again attempts to discredit Defendants' authenticity objections. For the same reasons, the Court DISREAGRDS Plaintiff's motion and the attached exhibits.

VI.   **UNDISPUTED MATERIAL FACTS[3]**

At all relevant times, Defendant Wang was a physician/surgeon and Chief Medical Officer at CSP. Wang Decl. ¶ 3. Defendant Clark was a physician/surgeon at CSP. Clark Decl. ¶¶ 1-2.

On August 21, 2009, Plaintiff was housed in the SHU at CSP. At approximately 8:24 a.m., Plaintiff attacked Correctional Officer Botello in his cell with a metallic weapon. Trenary Decl., Ex. A.[4] Plaintiff was found guilty of attempted homicide of a peace officer and assessed a

---

[3] Facts which are immaterial to resolution of Defendants' motion for summary judgment, unsupported by admissible evidence, and/or redundant are omitted.

[4] Plaintiff objects to Exhibit A to C. Trenary's Declaration, arguing that the exhibit, which is a copy of the Rules Violation Report ("RVR"), is "false as stated in motion and pointed out in Ex. E-1." ECF No. 61, at 4. Plaintiff's exhibit E-1 is the probation officer's report from his state criminal proceedings, and it is unclear how this document calls into question the authenticity of the RVR. To the extent that Plaintiff cites a different log number, it appears that the log number changed slightly after the Chief Disciplinary Officer ordered that the RVR be reheard when a due process error was discovered. Exhibit A includes the rehearing, which occurred on January 12, 2011, and there is no indication that the document is "false," as Plaintiff contends. ECF No. 56-5, at 10-15. Plaintiff also objects to the document because it includes numerous witness statements indicating that Plaintiff was walking, jumping, leaping, lunging, etc. at Officer Botello. Plaintiff's disagreement with the factual content, however, is not a proper basis for objection. Finally, Plaintiff appears to object on the basis of hearsay, contending that Defendants did not submit a declaration from anyone who saw Plaintiff stand. Plaintiff's objection is overruled. "At summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotations omitted). The focus is on the admissibility of the evidence's contents, not its form, and the officers who gave statements cited in the RVR can testify at trial regarding what they saw. Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

credit forfeiture of 360 days.[5] Plaintiff was also criminally convicted of violating California Penal Code sections 4500/667(B)(1) and sentenced to 27 years. Trenary Decl., Ex. A.

After the assault, Plaintiff was taken to CSP's hospital for injuries he sustained. Defendant Wang does not have any present recollection of treating Plaintiff on August 21, 2009. However, Defendant Wang completed Interdisciplinary Progress Notes for Plaintiff on August 21, 2009. Wang Decl. ¶ 4, Ex. A. Defendant Wang examined Plaintiff at approximately 9:00 a.m. on August 21, 2009. Wang Decl. ¶ 6. Defendant Wang noted that he had been informed that Plaintiff was involved in a staff assault, and that he was standing up when he attacked the correctional officer.[6] Plaintiff complained of left foot and ankle pain. Wang Decl. ¶ 7, Ex A. Defendant Wang noted that Plaintiff was currently classified as a wheelchair bound inmate ("DPW status"). Wang Decl. ¶ 7, Ex. A.

DPW stands for full-time wheelchair user, which requires wheelchair use in the cell and wheelchair accessible housing and path of travel. Clark Decl. ¶ 13. DPO stands for intermittent wheelchair user. DPO inmates require a lower bunk and wheelchair accessible path of travel, but do not require wheelchair use inside the cell or a wheelchair accessible cell. Clark Decl. ¶ 14.

Defendant Wang examined Plaintiff and noted the following: he had no prior medical history of diabetes, hypertension, asthma, or hepatitis; Plaintiff was alert, conversant and coherent; his chest and lungs were clear; there was no tenderness over his chest wall or abdomen; he had a regular heart reading with no murmur; and his left foot was swollen and tender. Wang Decl. ¶¶ 7-8, Ex. A. Defendant Wang's initial assessment of Plaintiff's injury was that he had a

---

[5] Plaintiff attempts to dispute this by arguing that a rehearing was never held. However, the RVR shows that a rehearing was held on January 12, 2011. ECF No. 56-5, at 10.

[6] Plaintiff objects to the statement that he was standing up as hearsay. Plaintiff's objection is overruled. As explained earlier, the focus is on the admissibility of the evidence's contents, not its form, and the officers who gave statements to Defendant Wang can testify at trial regarding what they saw. Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The statement is also relevant to Defendant Wang's treatment decisions. Plaintiff also states that he never told Defendant Wang that he was standing up, but Defendant Wang did not obtain the information from Plaintiff. Accordingly, the fact remains undisputed.

strained left foot with no metatarsal fracture. Wang Decl. ¶ 9, Ex. A. Defendant Wang ordered an immediate x-ray of Plaintiff's left foot. Wang Decl. ¶ 10, Ex. A.

After Plaintiff's foot was x-rayed, he saw Defendant Wang again at 10:20 a.m. Based on the x-ray, Defendant Wang determined that Plaintiff's left foot did not have a fracture or dislocation. Wang Decl. ¶ 11, Ex. A, B. Defendant Wang released Plaintiff to his cell and did not prescribe any additional medical appliances or medication because as a DPW inmate, Plaintiff already had a wheelchair. Plaintiff also had prescriptions for Gabapentin and Oramorph, both of which are pain medications. Wang Decl. ¶ 12, Ex. A. His exact notation states, "He already has Gabapentin and Oramorph. He is wheelchair bound (DPW) no weight bearing [left] foot is anticipated." Wang Decl., Ex. A.

At approximately 12:00 p.m. on the same day, Plaintiff was seen by Defendant Clark. Defendant Clark does not have any present recollection of treating Plaintiff on August 21, 2009. However, Defendant Clark completed Interdisciplinary Progress Notes for Plaintiff on August 21, 2009. Clark Decl. ¶¶ 4, 5, Ex. A. Dr. Clark noted that he had been informed of Plaintiff's staff assault, specifically that Plaintiff was either standing on the sink, or at the foot of the bed, and lunged at the entering officers, stabbing at least one.[7] Clark Decl. ¶ 7, Ex. A. Defendant Clark noted that he did not examine Plaintiff. Clark Decl. ¶ 7, Ex. A.

Defendant Clark noted that Plaintiff's disability was uncertain, and that based on the information he was given, he believed that Plaintiff could ambulate on his own to some extent and did not require a wheelchair in his cell.[8] Clark Decl. ¶ 9, Ex. A. He also noted that it was

---

[7] Plaintiff objects to the statement that he was standing up as hearsay. Plaintiff's objection is overruled. As explained earlier, the focus is on the admissibility of the evidence's contents, not its form, and the officers who gave statements to Defendant Wang can testify at trial regarding what they saw. Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The statement is also relevant to Defendant Clark's treatment decisions.

[8] Plaintiff attempts to dispute this by arguing that (1) Defendant Clark requested that he see a neurologist in October 2008; (2) Defendant Clark completed a chrono on August 21, 2009, indicating that Plaintiff could not stand to work; (3) Plaintiff was transferred as a paraplegic on August 21, 2009; and (4) his paralysis was confirmed on March 30, 2010. First, Defendant Clark's October 2008 request does not dispute the fact that Defendant Clark noted that his disability was "uncertain" almost one year later. Second, his limitation that Plaintiff could not stand to work was

9

clear that Plaintiff was not wheelchair bound.  Defendant Clark told Plaintiff that he was changing him from DPW status to DPO status.  Defendant Clark removed the cane, crutches and wheelchair from Plaintiff's Comprehensive Accommodation Chrono, CDCR Form 7410 ("Chrono").  Clark Decl. ¶¶ 9, 10, Ex. B.

Defendant Clark completed a new Disability Placement Program Verification, CDCR Form 1845 ("DPPV"), for Plaintiff on August 21, 2009.  Clark Decl. ¶ 11, Ex. B.  The form changed Plaintiff's disability status from "Full-Time Wheelchair User- DPW" to "Intermittent Wheelchair User- DPO."  It also noted that Plaintiff required relatively level terrain and no obstructions in his path of travel.  It set the following housing restrictions: lower bunk, no stairs and no triple bunk.  Clark Decl. ¶ 12, Ex. B.

As Chief Medical Officer, Defendant Wang was responsible for approving inmates' DPPVs and Chronos.  Wang Decl. ¶ 14.  Defendant Wang approved Plaintiff's DPPV completed by Defendant Clark on August 21, 2009.  Wang Decl. ¶ 15.

The reclassification of Plaintiff's disability status from DPW to DPO was correct.[9]  Clark Decl. ¶ 15; Wang Decl. ¶ 19.  In Defendant Wang's opinion, Plaintiff's assault on an officer while standing, in part, made it apparent that Plaintiff did not need a wheelchair in his cell and should be classified as a DPO inmate.[10]  Wang Decl. ¶ 19.  Defendant Clark also believes that

---

based on the current injury to his left foot.  Third, in the August 21, 2009, Health Care Transfer Information form that Plaintiff cites, "paraplegic" is written under "Chronic Care Program (List Type)."  ECF No. 60, at 63.  It also states that Plaintiff is "DPO status" and that his last examination was on August 21, 2009.  Indeed, during his last examination with Defendant Wang, Defendant Wang noted that he was DPO status.  This does not dispute Defendant Clark's belief that based on the information he was given, Plaintiff's disability was uncertain.  Finally, the March 30, 2010, medical evaluation does not dispute Defendant Clark's uncertainty in August 2009.

[9] Plaintiff contends that this fact is disputed, though his "facts" do not render the fact disputed.  Plaintiff first notes that he didn't even need to see Defendant Clark after Defendant Wang released him as DPW.  He argues that the only reason Defendant Clark wanted to see him was for "malicious intent."  However, Plaintiff's arguments are not sufficient to create a dispute of fact.  Arguments or contentions set forth in a responding brief do not constitute evidence.  See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987).  Moreover, as Defendants note, Plaintiff's arguments are directed at the removal of the wheelchair, which occurred on the Chrono (not the DPPV).

[10] Plaintiff's objection based on hearsay is overruled, as noted above.  Plaintiff also argues that he did not tell Defendant Wang that he used a cane in his cell, and the excerpt is from a conversation Defendant Wang had with a nurse.  Regardless of where the information came from, Defendant Wang was given the information and used it to

the classification was correct based on the information he had received that Plaintiff was either standing on the sink or at the foot of the bed and lunged at the entering officers.[11]  Clark Decl. ¶ 15.

Defendant Wang approved Defendant Clark's August 21, 2009, Chrono.  Wang Decl. ¶ 20.  The Chrono only entitled Plaintiff to a ground floor cell, bottom bunk, no stairs and a wrist brace.  It also noted that Plaintiff had a physical limitation for job assignments because he could not stand to work.  Clark Decl. ¶ 17, Ex. C; Wang Decl. ¶ 21, Ex. E.

However, Defendant Clark states that the Chrono should have included the use of a wheelchair outside of Plaintiff's cell, based on his status as a DPO inmate.  Clark Decl. ¶ 18.  Defendant Wang also states that he should not have approved the Chrono because it did not include a wheelchair, and that as a DPO inmate, Plaintiff should have had the use of a wheelchair outside of his cell.  Wang Decl. ¶ 22.

Plaintiff was transferred from CSP to SATF, also located in Corcoran, California, on the same day.  Trenary Decl., Ex. B.  Plaintiff's August 21, 2009, Health Care Transfer Information indicates that Plaintiff was transferred with active medications.[12]  Daniels Decl., Ex A.[13]

On August 25, 2009, Plaintiff's left foot was x-rayed and he was prescribed Gabapentin and Oramorph.  Daniels Decl., Ex. B and C.

---

support his conclusion.  Plaintiff also tries to dispute Defendant Wang's belief by contending that Defendant Wang would not have released him as DPW-wheelchair bound, and would have instead made the change to DPO then.  Defendant Wang's failure to take such an action at that time, however, does not render his belief in dispute.

[11] Plaintiff's objection based on hearsay is overruled, as noted previously.

[12] Plaintiff contends that "no" was checked, and then someone checked "yes" to "defraud the court."  Plaintiff's objection is not well taken.  Under "Medication Administration Record Attached," the "No" box was checked, but then crossed out and the "Yes" box was checked.  In any event, under these boxes, in large handwriting, states, "Active Medications."  Plaintiff's objection is unfounded and therefore overruled.

[13] Plaintiff objects to Exhibits A, C, E, F and G attached to the Declaration of R. Daniels.  Plaintiff contends that Daniels cannot verify the contents of documents that he did not create.  He also contends that the exhibits are hearsay.  R. Daniels is the Health Records Technician II at Pelican Bay State Prison, where Plaintiff is currently incarcerated.  As the custodian of the health care records, R. Daniels is the proper party to submit the medical records to the Court.  As to Plaintiff's hearsay objection, it is overruled for the reasons discussed previously.

On September 15, 2009, Plaintiff received a new DPPV.[14]  The DPPV maintained Plaintiff's DPO status, his requirements for relatively level terrain and no obstructions in path of travel, and his housing restrictions (lower bunk, no stairs and no triple bunk).  Daniels Decl., Ex. D.  Under "Health Care Appliance," this DPPV also indicated that Plaintiff needed a wheelchair.  Daniels Decl., Ex. D.

On September 23, 2009, Plaintiff received a new Chrono.  Daniels Decl., Ex. E.  The Chrono entitled Plaintiff to the following medical devices: manual wheelchair, walker and wrist brace.  Daniels Decl., Ex. E.

## VII.   DISCUSSION

### A.   Legal Standard

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective

---

[14] Plaintiff disputes this by citing to Exhibit G to his declaration, though there is no such exhibit.  He states that the DPPV and Chrono were actually completed by T. Byers on September 23, 2009.  While it appears that T. Byers completed the Chrono on September 23, 2009, he completed the DPPV on September 15, 2009.  Daniels Decl., Ex. D and E.

recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

  B.  Analysis

    1. *Defendants' Reclassification*

Defendants concede that Plaintiff's disability was a serious medical need. However, they contend that Defendant Clark's reclassification of Plaintiff from DPW to DPO, and Defendant Wang's subsequent approval, was proper.

Defendant Clark contends that he reclassified Plaintiff based on the information he was given about Plaintiff's staff assault- that he was either standing on the sink, or the foot of the bed, and lunged at entering officers, stabbing one. Defendant Wang also believed that Plaintiff did not require a wheelchair in his cell based in part on information that he received regarding the assault. Specifically, Defendant Wang was told that Plaintiff was standing up during the assault.

In opposing Defendants' motion, Plaintiff argues that Defendants knew he was paralyzed, and therefore the removal of the wheelchair for use in his cell amounted to deliberate indifference. However, Plaintiff fails to raise a genuine dispute of material fact concerning Defendants' reliance on the information they had.

Plaintiff must demonstrate "a purposeful act or failure to respond" to his medical need. Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Here, the undisputed evidence shows that Defendants reclassified Plaintiff as DPO based on the information they were given regarding the attack- information that demonstrated that Plaintiff was able to stab a correctional officer who had entered his cell. Plaintiff disputes (1) that he was standing; and (2) that he jumped at the officer. However, even if these facts are disputed, he fails to dispute that Defendants acted upon information they were given about the assault. In other words, even if Defendants thought Plaintiff was "paralyzed" prior to the attack, the undisputed facts show that Defendants were given information that suggested that Plaintiff could get around his cell without the use of a

wheelchair. Under these facts, Plaintiff cannot show that Defendants acted with the requisite state of mind.

Plaintiff also attempts to create a dispute by arguing that Defendant Wang "fraudulently" omits the notation that Plaintiff was "wheelchair bound" in his declaration. Indeed, in his progress notes, Defendant Wang states that Plaintiff is "wheelchair bound (DPW)." Wang Decl., Ex. A. However, contrary to Plaintiff's unfounded suggestion that Defendant Wang is attempting to deceive the Court, Defendant Wang acknowledges this in his declaration when he states that he noted that Plaintiff "already had a wheelchair as a DPW (wheelchair bound) inmate. . ." Wang Decl. ¶ 12. Defendant Wang explains, however, that he cited Plaintiff's DPW status to support his release without any further medical devices. That Defendant Wang did not immediately change Plaintiff to DPO status is of no consequence. Defendant Wang's treatment of Plaintiff on August 21, 2009, was related to his left foot injury. While he may have approved the reclassification after his examination, his purpose during the examination was to provide treatment for Plaintiff's left foot injury.

Plaintiff also disputes that he told Defendant Wang that he used a cane to get around inside of his cell. Wang Decl. ¶ 7, Ex. A; Pl.'s Decl. ¶ 31. This disputed fact, however, does not create the existence of a genuine issue for trial. The fact remains that Defendant Wang had sufficient information from other sources to support his reclassification.

Defendants are therefore entitled to summary judgment regarding Plaintiff's reclassification.

2. *Removal of Wheelchair*

Defendants concede that as a DPO inmate, Plaintiff was entitled to a wheelchair for use outside of his cell. However, Defendant Clark contends that the omission of Plaintiff's wheelchair on the Chrono was an inadvertent mistake, based on the fact that he had only been employed as a physician/surgeon with CDCR for one year, and he was still learning about the

14

DPPV and Chrono program.[15]  Clark Decl. ¶¶ 18, 19.  He contends that he did not intend to harm Plaintiff in any way.  Clark Decl. ¶ 19.

Similarly, Defendant Wang contends that he was mistaken in approving the Chrono that did not include the wheelchair.  Wang Decl. ¶ 22.  He states that this was an unintentional oversight that he should have detected, and that he did not intend to harm Plaintiff in any way.  Wang Decl. ¶ 23.

For a variety of reasons, Plaintiff argues that Defendant Clark's omission was deliberate.  While most of Plaintiff's arguments are too tenuous to create a dispute of fact, Plaintiff's contention that Defendant Clark told him that his appliances were being removed and that he could "crawl on [his] belly asshole" creates a material dispute.  Pl.'s Decl. ¶ 13.  Defendant Clark does not specifically dispute that he said this, but instead reasserts his contention that he made an unintentional mistake.  However, if Defendant Clark did make this statement to Plaintiff, it is sufficient to raise a triable issue of fact as to Defendant Clark's intent in completing the Chrono without providing for wheelchair use outside of Plaintiff's cell.

As to Defendant Wang, however, Plaintiff fails to raise a genuine issue of material fact as to his intent.  Plaintiff contends that Defendant Wang did not make a mistake because his approval contradicted his own findings on August 21, 2009.  However, even though Defendant Wang released Plaintiff with a wheelchair after his examination, he still could have made a mistake when he approved the Chrono.  Plaintiff is attempting to equate an admitted mistake to deliberate indifference, a finding that is not supported by any evidence.

Moreover, although the Court has found that Defendant Clark is not entitled to summary judgment based on his statement, there is no evidence that Defendant Wang (1) knew of

---

[15] Insofar as Plaintiff attempts to dispute this by arguing that Defendant Clark has been a doctor for over thirty years, the length of time that he was a doctor has nothing to do with his employment with CDCR and his familiarity of CDCR's disability programs.

15


Defendant Clark's statement; or (2) made a similar statement. Accordingly, the dispute that exists as to Defendant Clark's intent does not exist as to Defendant Wang.

For these reasons, the Court finds that summary judgment should be granted as to Defendant Wang on the issue of approval of the Chrono. However, the Court finds that summary judgment should be denied as to Defendant Clark on this issue.

C.  Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

1.  *Defendant Wang*

As the Court has found that Defendant Wang did not violate a constitutional right, it need not further discuss the issue of qualified immunity.

2.  *Defendant Clark*

The Court has determined that Plaintiff's evidence, when taken in a light most favorable to him, can support a violation of the Eighth Amendment based on Defendant Clark's failure to provide for a wheelchair in Plaintiff's chrono.

Turning to the second prong, the Court must determine whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not


as a broad general proposition . . . ." Saucier, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

Plaintiff contends that Defendant Clark, rather than making a mistake, was deliberately indifferent because he told Plaintiff that he could crawl on his belly. Viewed in the light most favorable to Plaintiff, the Court finds that at the time of the events at issue, it would have been clear to a reasonable officer that telling Plaintiff that he could crawl on his belly, and then denying a wheelchair despite knowing that Plaintiff needed one, would constitute deliberate indifference to a serious medical need.

Accordingly, the Court finds that Defendant Clark is not entitled to qualified immunity, and recommends that Defendant Clark's motion for summary judgment on the ground of qualified immunity be denied.

## VIII. FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART. Defendant Wang is entitled to summary judgment on all claims. Defendant Clark is entitled to summary judgment on all claims except for Plaintiff's claim that he was deliberately indifferent in completing the Chrono without providing Plaintiff with wheelchair use outside of his cell.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

17

objections must be filed within fourteen (14) days from the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 24, 2014**                         /s/ Dennis L. Beck
                                                UNITED STATES MAGISTRATE JUDGE