UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOWARD,<br><br>        Plaintiff,<br><br>   v.<br><br>CLARK,<br><br>        Defendant. | Case No. 1:10-cv-01783 DLB PC<br><br>ORDER REGARDING DEFENDANT'S MOTION TO ENFORCEMENT SETTLEMENT AGREEMENT<br><br>(Document 107) |

Plaintiff Timothy Howard ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation. Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The action is proceeding on Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Edgar Clark.[1]

Defendant filed the instant motion on July 21, 2015. Plaintiff filed an opposition on August 20, 2015, and Defendant filed a response on August 28, 2015.

Defendants in Howard v. DeAzevedo filed a similar motion on July 23, 2015 (Document 105). Plaintiff filed an opposition on August 20, 2015, and Defendants filed their reply on August 28, 2015.

The motions are suitable for decision pursuant to Local Rule 230(l).

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes.

1

## I. PROCEDURAL HISTORY

The Court vacated the March 10, 2015, trial date on February 9, 2015, pursuant to the parties' request for a settlement conference. A settlement conference was held on April 2, 2015, but the case did not settle.

On April 14, 2015, the Court held a telephonic status conference during which Plaintiff agreed, on the record, to settle this action, as well as Howard v. DeAzevedo, et al., 1:11-cv-00101-AWI-SKO, Howard v. Byers, et al., 1:12-cv-00486-RRB, and Howard v. James, et al., 1:12-cv-00485-RRB.[2] Specifically, Plaintiff agreed to settle the four subject actions for $5,000.00. The Court ordered Paul Cooney, counsel for Defendant Clark, to circulate dismissal documents within thirty days.

On May 5, 2015, Mr. Cooney provided Plaintiff with a Stipulation for Voluntary Dismissal, Settlement Agreements and Releases and a Payee Data Form, along with instructions for the completion and return of the documents. Cooney Decl. ¶ 6. After Plaintiff did not return the documents, Mr. Cooney initiated a telephone conference with Plaintiff. During the call, Plaintiff indicated that state agencies and departments could no longer deposit funds into his inmate trust account because of a change in procedure, and that he would not execute the settlement documents. Mr. Cooney told Plaintiff that the new procedure did not apply to state agencies and departments, though Plaintiff would not believe him. Cooney Decl. ¶¶ 7-10.

On June 29, 2015, Plaintiff filed a motion for a telephonic status conference. Plaintiff believed that new rules governing deposits into prison trust account statements would prevent receipt of the settlement payment. Plaintiff asked that the settlements be vacated, or that the funds be sent to an outside party. The Court ordered Defendant to file a response, and on July 3, 2015, Defendant filed a status report indicating that counsel's attempts to refute Plaintiff's belief had failed.

On July 6, 2015, the Court issued an order explaining that it could not enforce the settlement agreement without a motion pending before it.

///

///

---

[2] Defendants in 1:12-cv-00485 and 1:12-cv-00486 have not been served.

## II. LEGAL STANDARD

A district court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it. In re City of Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1995); Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). This enforcement power extends to oral agreements. Doi v. Halekulnai Corp., 276 F.3d 1131, 1138 (9th Cir. 2002). The moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement. See Olam v. Congress Mortg. Co., 68 F. Supp. 2d 1110, 1137 n. 19, 1140 (N.D. Cal. 1999).

Under federal law, there are two requirements for an oral agreement to be enforceable. First, the agreement must be complete. Maynard v. City of San Jose, 37 F.3d 1396, 1401 (9th Cir. 1994); Callie, 829 F.2d at 890. Second, both parties must have directly agreed to be bound by the terms of the settlement, or have authorized their respective representatives to settle the dispute. Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1144-45 (9thCir.1977).

In addition to the federal standards articulated above, the "construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th 1989). Therefore, even though the underlying cause of action presented in this litigation is based upon a federal statute, this Court applies California law regarding the formation and interpretation of contracts in determining whether a legally enforceable settlement agreement was reached. United Commercial Ins. Serv. v. Paymaster Corp., 962 F.2d 853, 857 (9th Cir. 1992); see also Harrop, 550 F.2d at 1145 (applying California law).

Under California law, contract formation requires (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object; and, (4) sufficient cause or consideration. Lopez v. Charles Schwab & Co., 118 Cal. App. 4th 1224, 1230 (2004). "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." Lopez, 118 Cal. App. 4th at 1230 (citing Cal. Civil Code §§ 1550, 1565). The existence of mutual consent is determined by objective criteria; the "parties' outward manifestations must show that the parties all agreed upon the same thing in the same sense." Weddington Prod., Inc., v. Flick, 60 Cal. 4th 793, 811 (1998).

3

With respect to interpreting the terms of a contract, the primary goal of contract interpretation is to give effect to the mutual intention of the parties. See Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992). The parties' mutual intent is determined by examining a number of factors, including: (1) the words used in the written agreement; (2) the surrounding circumstances under which the parties negotiated or entered into the contract; and, (3) the subsequent conduct of the parties. See Morey v. Vannucci, 64 Cal. App. 4th 904, 912 (1998).

### III. DISCUSSION

Based upon the Court's involvement in the telephonic conference that ended with a settlement agreement, the transcript of that hearing and the parties' briefing, the Court finds that the parties knowingly and voluntarily entered into a complete agreement, and that they intended to be bound by the terms of that agreement.

The following discussion occurred during the telephonic conference:

| | |
|---|---|
| The Court: | Okay. So Mr. Howard, let me ask you this question now: And let me preface it with this. You understand that by agreeing - - we're on the record now in court even though we're all on the phone. By agreeing to settle those cases today, you are forever bound by the terms that we state here and the cases will be disposed of on those terms. |
| Plaintiff: | Yes, sir. |
| The Court: | So let me - - you understand that, right? |
| Plaintiff: | Yes, sir. |
| The Court: | Okay. So let me ask you this: Do you agree that in exchange for $5,000 that will be paid to your trust account, I assume, but will be subject to restitution fines. |
| Plaintiff: | Yes. |
| The Court: | To settle the cases of Howard versus DeAzevedo, which is our case number 11-CV-101; the case of Howard versus Byers, which is 12-CV-486; the case of Howard versus James, which is 12-CV-485; and the case of Howard versus Wang, which is 10-CV-1783. Do you agree to that? |
| Plaintiff: | Yes. |
| The Court: | Okay. And you understand that by agreeing to it, you're forever giving up your right to pursue the claims made in those cases, assuming the State follows through with its agreement to pay $5,000? |

| | | |
|---|---|---|
| Plaintiff: | Yes. And supposed to be a stipulation that what a strike they would settle all the cases, all four cases. | |
| The Court: | You're settling them at this point. They will not be strikes. | |

ECF No. 102, at 15-16.

As to the terms of the agreement, the parties stated:

| | |
|---|---|
| Mr. Bragg: | Lawrence Bragg, Your Honor. As I understand it, the standard settlement agreement will say that payment will be made within 180 days of the time of the settlement agreement and all the associated paperwork is signed. And that's - - because, you know, CDCR does not actually issue the check, but the State controller's Office issues the check and we're kind of at their mercy. |
| The Court: | I understand that. I work for the government, too, albeit a different one. Mr. Howard, that's agreeable with you? |
| Plaintiff: | Yes. |
| The Court: | All right. Okay. |
| Plaintiff: | Are we trying to pay it back to them? |
| The Court: | Yes. What happens is they will send you the papers, the settlement agreement to sign. And once you've signed it and sent it back to them, we'll file it, they'll file it with the Court and the Court will then send you a copy of it once it's filed related to all four cases. And then the payment will come within about 180 days of that. And I assume just go in to the trust account and then be subject to the restitution obligation. Yes? |
| Mr. Bragg: | Lawrence Bragg. Yes. |
| The Court: | Okay. All Right. Mr. Howard, understood? |
| Plaintiff: | Yes. |
| The Court: | All right. Thank you so much, counsel. Mr. Howard, we're going to vacate all the dates in each of the cases and the notation on the docket that it's settled. And we'll be looking for signed settlement agreements and dismissals within 60 days. |
| Plaintiff: | I will sign it and return it to them and they can file it with the Court. |

ECF No. 102, at 19-20.

As Defendant argues, this conversation demonstrates, without question, that Plaintiff understood that these four cases would be settled for $5,000.00, subject to his restitution obligations, and that he intended to enter into such an agreement. Plaintiff did not express any uncertainty as to

5

the terms of the agreement, including his obligation to sign the settlement agreement and dismissal documents.

As an initial matter, the Court notes that Plaintiff's current opposition raises additional objections from those initially raised with Mr. Cooney during the June 29, 2015, telephone conversation. Plaintiff's initial objection was based on his belief that a new policy prevented Defendant from depositing the settlement funds into his trust account. In support of his motion, Defendant has provided the declaration of Anthony Curso, Senior Accounting Officer in the Inmate Account Branch Headquarters. He explains that settlement checks issued by California state agencies and departments, after restitution, are deposited into inmate trust accounts. Curso Decl. ¶ 4. The 'policy' referred to by Plaintiff is not used to process settlement funds. Curso Decl. ¶ 5. Plaintiff's initial objection is therefore not valid.

A.    Mistake of Fact

Plaintiff now adds an additional argument- that he never agreed to the terms and conditions in the settlement agreement, and that he never heard the Court elaborate on such terms and conditions. Plaintiff argues that he believed that he would receive $5,000.00, less "obligated Court restitution for $350.00 each and a total of $1,400.00 for filing fees restitution. . ." ECF No. 108, at 6. He contends that he was "led to believe" that $5,000.00, less $1,400.00 for "Court restitution," would be deposited into his prison trust account. ECF No. 108, at 6.

The intent behind Plaintiff's argument is clear. His restitution, as the term is commonly understood, is $11,165.87. Cooney Decl. ¶ 5. After application of the $5,000.00 settlement, his restitution balance is $6,165.87. As a result, and pursuant to California law, Plaintiff would not receive any funds from this settlement. Cooney Decl. ¶5. The Settlement Agreement sent to Plaintiff for signature clearly explained that CDCR is obligated under the California Penal Code to apply any settlement funds to Plaintiff's restitution balance, though it did not set forth the amount of his restitution balance or what amount, if any, would be left of the settlement funds. Cooney Decl., Ex. A and B.

Likely upon realizing that he would not receive any of the $5,000.00, Plaintiff crafted an argument suggesting that he believed the term "restitution," as used by the Court on April 14, 2015,

6

meant the Court's filing fees for the subject actions. He therefore argues that he did not understand, or agree to, the fact that his settlement funds would be applied to his $11,165.87 restitution. Plaintiff suggests that counsel "use[d] semantics as deception to lure Plaintiff into agreeing the State to reduce Plaintiff restitution." ECF No. 108, at 7.

Plaintiff's argument is unavailing. A factual mistake by one party, or unilateral mistake, provides grounds for rescission in certain limited circumstances. "Where the [defendants have] no reason to know of and [do] not cause the [plaintiff's] unilateral mistake of fact, the [plaintiff] must establish the following facts to obtain rescission of the contract: (1) the [plaintiff] made a mistake regarding a basic assumption upon which the [plaintiff] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the [plaintiff]; (3) the [plaintiff] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." Donovan v. RRL Corp., 26 Cal. 4th 261, 282 (2001).

Plaintiff is unable to satisfy these requirements. Even if Plaintiff's belief that "restitution" meant "filing fee" was a basic assumption upon which he made the contract, he is not entitled to rescission.[3] The mistake does not have a material effect on the performances that is adverse to Plaintiff. While Plaintiff may not like the fact that proceeds from this settlement will not be deposited into his trust account, Plaintiff still benefits from the settlement because his restitution will be paid down and he will ultimately owe less in that regard.

The Court also finds that Plaintiff should bear the risk of his alleged mistake. While only neglect of a *legal* duty bars relief from mistake, Cal. Civ. Code § 1577, "in extreme cases the mistaken party's fault is a proper ground for denying him relief for a mistake that he otherwise could have avoided." Donovan, 26 Cal. 4th at 284 (internal citations omitted). Where there is a failure to act in good faith and within a reasonable standard of fair dealing during negotiations, the risk should be allocated to the party claiming the mistake. Id. If Plaintiff thought that "restitution" meant "Court filing fees," a definition that has rarely, if ever, been used in the past, the duty to act in good faith and fair dealing required Plaintiff to ask for a clarification. This is especially true given that

---

[3] The Court questions whether a basic assumption can be based on an issue that is governed by statute, and over which the negotiating parties have no control.

7

just prior to the Court ensuring that Plaintiff understood the terms of the agreement, Mr. Bragg stated that Plaintiff's **"restitution obligation is over $10,000."** ECF No. 102, at 14. Moreover, Plaintiff, as a prisoner with a conviction involving restitution, is familiar with the ordinary meaning of the term and the statutory scheme for recovering restitution obligations.

Finally, the impact of the alleged mistake does not render enforcement of the contract unconscionable. "An unconscionable contract ordinarily involves both a procedural and substantive element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-sided results." Donovan, 26 Cal. 4th at 291 (citing Armendariz v. Foundation Health Psychcare Servs., Inc. 24 Cal. 4th 83, 114 (2000)). There is no evidence of unequal bargaining power, during either the telephonic conference or other settlement discussions, and enforcement will not result in overly harsh or one-sided results. As noted above, Plaintiff still receives a financial benefit from the settlement regardless of whether the funds go into his prison trust account or towards his restitution obligations. Defendant is still obligated to pay the settlement amount, and he receives no additional benefit if the funds are used to pay Plaintiff's restitution obligation.

For these reasons, the Court finds that Plaintiff is not entitled to rescission based on mistake.

B.     Rules Governing Restitution Payments

Plaintiff also argues that even if he understood the term "restitution" correctly, rules and regulations permit a deduction of only 50 percent, or the balance owing, whichever is less, from the inmate's wages or trust account deposits. Tit.15, Cal. Code Regs., § 3097. However, pursuant to California Penal Code section 2085.5(n), settlement funds are applied directly to a restitution obligation, rather than deposited first into the inmate's trust account. Any amount left over after application to the restitution balance is then deposited into the trust account. Cal. Penal Code § 2085(n).

Plaintiff also suggests that the settlement funds are exempt from restitution obligations because they constitute compensation for lost or destroyed property. Tit. 15, Cal. Code Regs., § 3097(j). His argument is based on his belief that he accepted $5,000.00 to settle the DeAzevedo case and dismiss the other three subject actions. Plaintiff characterizes the DeAzevedo case as involving retaliation, due process and confiscation of property. However, the main focus of DeAzevedo is a

denial of due process during a disciplinary hearing and retaliation.  While there may have been a component related to lost property, Defendants in DeAzevedo point out that the value of the items allegedly taken does not come close to $5,000.00, and Plaintiff did not ask for reimbursement in his prayer for relief.  1:11-cv-00101, ECF No. 107, at 5.  Plaintiff's contention that the settlement funds are meant for reimbursement of lost property therefore fails.

## IV.   CONCLUSION

Based on the above, the Court GRANTS Defendant's motion to enforce the settlement agreement.  As the undersigned presided over the conference during which the settlement agreement was reached and this order is equally applicable in all four of the subject actions, Findings and Recommendations in each of those actions.

Within ten (10) days of the date of service of this order, counsel shall distribute dismissal documents to Plaintiff.  Plaintiff shall sign and return the documents within fifteen (15) days of receipt, and payment shall be made within one-hundred eighty (180) days of the date of signature.

IT IS SO ORDERED.

Dated:   **September 8, 2015**                         /s/ *Dennis L. Beck*
                                                                                     UNITED STATES MAGISTRATE JUDGE

9